Good morning. Judge Hardiman and I are delighted to be here to join Judge Barry at today's sitting. She's the home person here. Judge Barry is delighted to have you, Judge Slovin and Judge Hardiman. So, we'll begin with OSS Nacalva v. European Space Agency. May it please the Court. Good morning. I'm Elliot Ostroff, date Pitney, on behalf of the European Space Agency. With me is my colleague, Amy McClellan. I didn't hear her name. Amy McClellan. Okay. Your Honor, I'd like to reserve two minutes for rebuttal time. That's granted. Thank you. The question presented on this appeal by the European Space Agency is whether the District Court erred when it found that the European Space Agency waived its absolute immunity by and through the wording of its convention. We respectfully submit, Your Honors, that the District Court did err. That decision should be reversed on this appeal. If we find that the District Court did not err in finding waiver, do we even have to reach the question in the cross appeal as to whether there's absolute immunity? No, you did not. I don't believe so. If you find that there was waiver, then there was waiver, and we will proceed in the District Court. The cross appeal, as Your Honor has pointed out, presents the question of whether this Court should break with 12 years of case law precedence and determine that, contrary to the D.C. Circuit's holding in the Atkinson case, that the International Organizations Immunities Act grants something other than absolute immunity to organizations recognized under it. Suppose a country, let's say Germany, entered into an agreement with NoCalva and breached the agreement. Would it be immune? Your Honor, that would be a question that would be answered by the Foreign Sovereign's Immunity Act of 1970. And would it be immune under the Foreign Sovereign's Immunity Act? It would depend on the agreement. Suppose it was a commercial arrangement, just like this one. Would it be immune? It would not, Your Honor. Then why should an agency be immune if the country itself would not be? Your Honor, the case law is clear. Starting with the Atkinson case law. Well, that's the D.C. Circuit, and we're not bound. I understand that. Let's look at the statutes. Why would there be any reason why a country would not be immune but an agency would be? What policy reason? Your Honor, it's actually a statutory reason as to why it is. Well, unless you apply the Foreign Sovereign's Immunity Act. Your Honor, the International Organizations Immunities Act was passed in 1945 and hasn't been amended or changed since that date. The Foreign Sovereign's Immunity Act was changed in 1976, and at that point in time, it incorporated the commercial activities exception that had been much of the practice with respect to foreign sovereigns. The International Organizations Immunity Act provides for a mechanism for which immunity of organizations that are granted immunity under that act can either be modified or revoked. That power lies with the President of the United States. That hasn't happened in this case. I'm not sure you've answered my question, which is what is the policy behind holding that the country itself would not be immune but that an agency would be? I think you're answering that by virtue of the statutes, Congress intended, your argument goes, that international organizations have broader immunity than foreign sovereign states. That's correct. What is the policy underlying that intent, if that is Congress's intent? Congress hasn't spoken as to what the policy was as far as that goes. I'm not sure that I can speak on their behalf. What I can say is that there is a difference between international organizations and foreign governments with respect to the way in which they act and the duties and responsibilities that they have throughout the world. Just because a foreign government who is here for diplomatic relations and the like and therefore entering commercial, into commercial contracts such as leases and for office space and by property and things of that nature, international organizations act more broadly. For example, the European Space Agency, which acts throughout the world with space efforts and other efforts that it makes throughout the world with respect to space exploration. They serve two very different functions. Just because a foreign government acting as a commercial entity, Congress has decided that it should not be immune from suit in that circumstance, doesn't necessarily translate to an international organization should not be immune from suit. That's a policy argument. You said should not be immune. Let's look at the language of 288AB. It says that they enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments. Is that not an explicit textual command to put them in pairing material with the foreign governments rather than giving them a broader form of immunity? Well, that was an explicit textual command as of 1945. And as of 1945, foreign governments enjoyed absolute immunity. At the time that Congress decided to change the immunity of foreign governments, Congress decided not to change the immunity that was granted to international organizations. Congress could have easily, in 1976, when it changed the Foreign Sovereign Immunity Act, changed the International Organizations Immunity Act as well. It did not. All right. That argument might hold water in a case where the contract doesn't have a form selection clause, right? But here we have an explicit waiver in the contract. Three of these contracts say if we have a dispute, we're going to court in New Jersey. It's hard to find a more explicit waiver of immunity than that. If you have immunity from suit, you're explicitly admitting that you're amenable to suit in New Jersey. That's correct. Your Honor, first I'd like to point out that the district court in this case did not rely on those contracts in finding waiver. Well, but we can, though. I'm not saying that you can't. I just wanted to make that point. As far as that waiver in those contracts, I think we first need to look at the very first contract, the most expensive contract and the biggest contract between these two entities. Yeah, but the other three, well, truly the other six, because it's both the actual contract and the maintenance contract. So there are two throughout. But they didn't. So what do we do if we were to rely on that? Your Honor, I would submit that based on the record before you, you cannot rely on that. You say the other three, the other six were mistakes. Well, why isn't the first one a mistake? Well, the first one was clearly explicitly negotiated between the parties. That's the one you want to look at, but you're saying, no, you have to look at this one, Court. You can't look at the other three. Why not? Well, Your Honor, in order to find that there was a waiver of immunity by those contracts, this Court needs to find that the people signing on behalf of both organizations understood that or the person signing on behalf of the European Space Agency had the authority to waive immunity. And that's an explicit finding that this Court would have to make in order to rely on those contracts. But there are different people who signed them. It wasn't the same person that signed them all. That's correct. It's all the more reason why we submit that at best there was confusion as far as what was allowed. All your people are confused? Well, no, I'm not saying that, Your Honor. What are you saying? They were mistaken. Everybody made a mistake in the other three. Well, Your Honor, the record has an e-mail exchange regarding one of the contracts. And the e-mail exchange reveals that the person who was discussing on behalf of the European Space Agency didn't really know what the story was, the back story was. They were told by OSS Nakaba that this was the agreement that you signed last time. And he said, oh, well, if that's the agreement we signed last time, then I'll sign it again this time. Let me ask you a question because your time is running out and we haven't gotten to what is really your primary argument, I think, that the counsel has to express under the Convention, the counsel has to expressly waive its immunity pursuant to the Convention, correct? That's correct. Now, I have problems with the district judge's finding on that score, but that's for your friend to cross the aisle. Let me just ask you this. How in the past, how, give me an example of how the counsel has expressly waived its immunity pursuant to the Convention. What is the process like and how is it, when has it been done? I don't have an example for you, Your Honor. I'm not sure that it's ever been done. I don't have an example for you. I can tell you that in this case the record is clear that the counsel did not waive the immunity in this case. Did not expressly waive it. And the statute requires an express waiver. But then we get into apparent authority and ratification after five or six years, of course, of dealing between these parties, right? Well, you get into the question of apparent authority. That's correct. And why shouldn't we find apparent authority here? Well, Your Honor, because if we look to the contract that was clearly negotiated, we see that O.S.S. Talcava was put on notice that in order for the European Space Agency to do a deal with them, they needed to strike out that choice of venue provision and insert instead an arbitration provision. Well, you're throwing in the towel again on the three or six that reference New Jersey law. Are you conceding that point? You keep coming back to the arbitration one. That's correct. Well, what is the position of the State Department representatives? Isn't that of some significance? I haven't heard from any State Department representatives. Well, aren't there letters in the record? There are letters from State Department representatives from cases of old. The State Department representatives' letters that we're talking about are from cases that predate the Atkinson decision. Well, the Atkinson decision is another court's decision that doesn't bind us. I understand that, Your Honor. It's not a Third Circuit decision. It is not, although I will say that. It's questionable. But what did the State Department representatives say? They have some interest in this issue. There has been no State Department representative that said anything about this case. Not this case. What did they say before about the waivers and immunity and commercial activities? Your Honor, you're talking about the Owen letter from the 1980s. Yeah, you know what I'm talking about. Right. In that letter, the State Department— It's a very disingenuous position, yeah. The State Department did express an opinion about that international organizations should have the same kind of immunity that foreign sovereigns do, and that the commercial activities— And therefore, no more than foreign sovereigns do. That's correct, Your Honor. Though, as I'm sure you'll expect me to point out, that State Department letter was out there, has been considered by several courts, and has never been adopted by a single court that has known about it. Well, it's not adopted, but it's— Well, the position hasn't been adopted. I'm not—okay. You have a minute more. Okay, Your Honor. What I do want to talk about quickly is the district court's application of the corresponding benefits test in this case, and point out why it is that it was inappropriate to do so in this case. As the court is well aware, the European Space Agency's convention is very clear and very explicit on when it waives its immunity and limits it to where the council has waived it expressly, where there's been an auto accident, where it's a garnishment proceeding by one of its employees, and finally, where it is that it's for enforcement of arbitration agreements, such as the arbitration agreement from the first contract here. The district court erred in applying the corresponding benefits test, because that test was developed in order to narrow a much broader waiver of immunity, such as those that are in the various cases that have been cited by the parties. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. Ronald Disrill from Wolf and Sampson, representing the plaintiff, appellee, cross-appellant, O.S.S. Nakalda, Inc. With me are Kiran Samashikara and Graham Claybrook from my office. Good afternoon. Both you and your friend across the aisle agree that if we were to affirm on waiver, we don't have to reach the question of absolute immunity, correct? Absolutely, Your Honor. What do you think your stronger position on waiver is? Is it waiver under the convention or waiver as a matter of contract? We believe in this case, Your Honor, that they are both equally strong. In fact, we are not aware of any case where we had a congruence of both a convention, whereby a court can adopt the corresponding benefit test, and also where we have very expressed waivers of at least immunity to begin with, regardless of what the form is, in all eight of these contracts. Well, let's go to the convention. Now, the district court found applicable, the exception in the convention, that the counsel has the duty to waive immunity where reliance on it would impede the course of justice or prejudice the interests of the ESA, right? Yes. The district court then went on to find that justice would not be impeded and the rights of the ESA would not be prejudiced, given the corresponding benefits. But the court doesn't mention in the opinion the requirement that the counsel has to make these findings, and the counsel has to expressly waive immunity. Rather, the court went right to those findings and waived the immunity itself. Where did the district court get the authority to make the waiver determination, rather than the counsel making it? Your Honor, the case law all the way back from Indaro through and including Osiris and Vila, and I understand they're all from the D.C. Circuit, make it very clear. It is the United States court system and not the counsel and not the convention that determines waiver of immunity. Meaning, to answer your question, the counsel didn't have to do anything. The district court did not have to make that determination. If you read every one of the D.C. Circuit cases and the district court of D.C. cases on this issue, they are all finding waivers of immunity under a corresponding benefits analysis without the counsel or convention in that particular organization doing anything. Ignoring an express provision, an express requirement in the convention, is that what the law says? Osiris makes it very clear. The U.S. determines under the IOIA whether or not there's a waiver of immunity. The counsel's language is for the counsel. It is not for the United States to look at their convention or what the counsel may or may not have done to determine whether it was a waiver of immunity. Mr. Israel? Yes. Did you argue before the district court that the FSIA changed the interpretation? Did you argue the FSIA before? Because the district court doesn't accept that argument, or doesn't go that way, which seems the most obvious way that it could have gone. The district court on that issue- I just want to be sure you argued it before I- We absolutely argued the FSIA issue. The district court decided to follow the analysis of Atkinson, we believe erroneously, which is the subject of our cross-appeal. I can't tell you why the district court did that. No, I wasn't asking you why. We absolutely briefed it before the district court. I want to be sure that it was preserved. Mr. Israel, I have a question about the corresponding benefits test. Mindaro, I believe, was the first case or the seminal case to apply it. Is that right? Basically, Your Honor, I think there was a case in 1967 called Lutcher, but for all intents and purposes, Mindaro is the starting point of the analysis. Did Mindaro involve an explicit form selection clause such as the one that we see here or ones that we see here? No, I believe that in Mindaro all there was was a convention. It was the World Bank, and the court interpreted that the World Bank, in that case, did not waive immunity because the lawsuit was a sexual harassment retaliation claim. But the language of Mindaro makes it very clear that if it were a commercial activity-type case like we have here, that Mindaro would have come out the other way. Even Atkinson takes that position. All right, but I'm puzzled as to why we ought to apply the corresponding benefits test at all in a case such as this one where these two sophisticated parties are entering these agreements that specifically call for their disputes to be resolved in New Jersey State Court in some instances and in another instance in an arbitral form. Why isn't this just a garden variety contract case where we enforce the language of these contracts? I understand your position completely. I think that the fact that there were these contracts is a clear waiver of immunity by the ESA. If you take that position, isn't that inconsistent with the fact that the first of the contracts and the corresponding maintenance agreement expressly forced out the waiver? Your Honor, two sophisticated parties entering into multiple or a series of contracts are completely able to amend or change the dispute resolution process. But what would you do at trial? I mean, how could you talk away the first contract? I mean, what is it that the first contract did that second, third, and fourth didn't do? Are you asking why there's a series of license agreements? No, I'm asking how can you proceed just on the second, third, and fourth since you can't proceed on the first? Because that was forced out deliberately. Your Honor, we understand the language of the first agreement. It is our position that ESA has waived the right to arbitrate any issues arising out of that license agreement or its corresponding maintenance agreement because they didn't move to compel arbitration. That's not the question. I mean, the question really is has ESA only submitted to the court's jurisdiction with respect to the claims arising out of the last three agreements? Initially, they may have based upon the language of the agreements, but we believe that they waived the right to argue that we cannot litigate the substance of the first license agreement. How did they do that? They made as a strategic decision to move to dismiss the entire lawsuit based on immunity grounds and immunity grounds solely. Brotec case, which is relied on heavily by ESA, and what the agency did in Brotec is they simultaneously moved to dismiss on immunity grounds and they moved to compel arbitration. The Eastern District of Pennsylvania first found that there was a waiver of immunity under a corresponding benefits test and also by the nature of the contracts, but because the contracts called for arbitration, the court dismissed the lawsuit and directed the parties to arbitrate. ESA did not do that in this case. They put all their eggs in one basket under one attempt to get rid of the entire lawsuit on immunity grounds, and we believe that was a strategic decision. Of course, the district court hasn't dealt with any of this. And we don't believe the issue of arbitration is before this court because it wasn't raised below and the belief footnote three of the – there's a footnote in the judge's decision that says that the issue of arbitration is not before – it wasn't before the district court. All that was raised was the issue of immunity. But we have to reach it, do we not, as to the first contract, because if we say that – let's say for the sake of argument that we enforce the New Jersey Selection Clause and the other three. That doesn't answer the question as to what happens with the first contract. Then we have to drill down to the immunity analysis, do we not, with respect to the first contract? I believe the issue before this court is whether ESA waived immunity. The issue of whether it's arbitration or court, to me, is a form selection issue. That's not before this court. It sounded a minute ago like you would concede that if your able adversaries had gone into the district court and said, look, as to the first contract, we concede that we're going to have to arbitrate that. But you can't sue us on the others in New Jersey because we have immunity. And your argument is more of a procedural default argument that they didn't make that. As you said, they put all their eggs in one basket. And now if we send it back to the district court, you're going to say to the district court, if they do move to compel arbitration on the first, that it's not a timely request. Is that where we are? Yes, Your Honor. Would you succinctly state your argument with respect to the effect of the FSIA? The Foreign Sovereign Immunities Act, as a beginning step, only codified. It did not change any law of the United States of America. It codified a practice of how the United States government afforded immunity to foreign countries. It was a practice that had been, we cite case law all the way back to 1929, that indicates that while the typical practice may have been to grant immunity to foreign countries, it was never absolute. And it was a determination made by the State Department on a case-by-case basis. This was the practice in 1945 when the IOIA was enacted. And in 1976, to allow countries to have some comfort in a written body of law, rather than just the practice that had been in place forever, Congress enacted the Foreign Sovereign Immunities Act. And it is a very clear commercial activity exception with various aspects of what could be deemed a commercial activity so that foreign countries can understand exactly when or when they may not be immune from suit. Now, how does that come in to the agencies? You have to make a connection. Absolutely, Your Honor. And I think Judge Hardiman had made that connection by the very language of the IOIA, which is a reference statute, and Atkinson acknowledges it's a reference statute. It refers to the body of law and the level of immunity afforded to foreign sovereigns. So in 1976, when the Foreign Sovereign Immunities Act made very specific what the commercial activity exceptions were, we believe that that absolutely applies to all international organizations under the IOIA. The State Department in Owen in 1980, the Owen letter, made that very clear. The State Department in an amicus brief in Broadbent in 1980, the language could not have been clearer. It said, the expressed language and the statutory purpose underlying the IOIA bring international organizations within the terms of the Foreign Sovereign Immunities Act. What case was that? It was an amicus brief submitted to Broadbent versus the Organization of American States, 628 F. And the specific language of the amicus brief is at pages 6 and 10. The F second said it was in the Court of Appeals. It's a D.C. circuit. Well, that's a Court of Appeals. Yes. Now, in that case, Broadbent didn't need to adopt that issue on other reasons. No, but I was asking about the State Department's amicus brief. Absolutely. The State Department has consistently made it clear that the level of immunity afforded to international organizations is the exact same that is currently codified in the Foreign Sovereign Immunities Act. I will note that while not analyzing this issue specifically, that the District Court of Delaware and the Third Circuit have touched upon these issues in a case called NRA Kaiser Group International. The District Court of Delaware, the decisions at 302 Bankruptcy Reporter 814. Is that in your brief? It's in our reply brief before this Court, Your Honor. Specifically, it was asked by the IFC to find that it had a higher level of immunity than foreign sovereigns in analyzing the Bankruptcy Code 106. And the District Court of Delaware said that it was not persuaded that the level of immunity by IFC is substantially different from sovereign immunity. And the Third Circuit affirmed the decision. It didn't analyze the issues, but the District Court of Delaware was certainly aware of the IOIA, as was the Third Circuit. We believe that a decision by this Court that there is a commercial activity exception under the IOIA because of the FSIA would be in accord with Kaiser, as well as the State Department. And we wouldn't have to reach the corresponding benefit problem and the waiver in this specific context. Absolutely, Your Honor. If you find that there is no immunity to begin with, then there's no reason to find a waiver. You still have 28 seconds. I don't need to fill the – if Your Honors have any other questions, I'd be happy to answer them. Otherwise, thank you very much, Your Honor. I think you saved two minutes for rebuttal. Yes, I did, Your Honor. Good. I guess I wanted to touch on two issues and obviously answer any questions that you might have. All in two minutes. All in two minutes, yes. With respect to the waiver or OSS's claim that the European Space Agency has waived its right to arbitrate, in this case under that first agreement, we certainly disagree with that. We were clear to the District Court that the appearance that was being made was a special appearance simply for raising the question of subject matter jurisdiction. There was no other appearance made by the European Space Agency, and we believe that we have not waived that right to seek arbitration if, in fact, this court sends us back. That's not really before us, is it? It isn't. But since it was raised, I wanted to address it. The second issue I wanted to raise is actually the last issue that my colleague raised with respect to the In re Kaiser Group, Your Honor, the District Court said that – or I should say the District Court found that there is sovereign immunity. It didn't define the scope of that sovereign immunity, nor did it have to with respect to what it is that it had before it. But it did find sovereign immunity for the organization, and in so finding it specifically cites to the Atkinson case, that court's reasoning as to why it is that the organization has immunity. The specific issue of immunity when it was before this court apparently was not the main issue before this court, but this court agreed that the organization did have immunity with respect to that organization, and it therefore agreed with the District Court's citations to the Atkinson case. The President did add it to the list. Excuse me, Your Honor. Clearly the ESA has added to the list of agencies. That is correct, Your Honor. The President Johnson did that. Thank you. Thank you very much. Thank you very much. Thank you. We'll take the matter under advisory.